**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CARL NAPIER, *et al.* | No. 24cr455 (EP)<br><br>**MEMORANDUM ORDER** |

**PADIN, District Judge.**

The Superseding Indictment charges five defendants in fourteen counts. D.E. 71 ("Superseding Indictment" or "SI"). Carl Napier, Hamir Wright, Alexis Tejada, Jihad Bibbs Sr., and Jamie Archer-Monroe (collectively, "Defendants") are alleged to be "members and associates" of the Bounty Hunter Bloods, a gang operating in and around New Brunswick, New Jersey. *Id.* ¶¶ 1–2, 12. The Government further alleges that on March 12, 2024, Napier and Wright confronted members of a rival gang while Tejada, Bibbs, and Archer-Monroe were present. *Id.* ¶ 18(j). Napier then fired at the rival gang members, killing one and seriously wounding another. *Id.* (the "Shooting").

Two of the five Defendants—Napier and Bibbs—seek severance. Napier is charged in eleven counts, including Count One of the Superseding Indictment, which charges a conspiracy to commit racketeering and alleges the Shooting as an overt act. *Id.* ¶¶ 16–18; *id.* at 13–23. Bibbs is charged only in Count Thirteen of the Superseding Indictment, which alleges that he possessed cocaine base with intent to distribute ("Count Thirteen" or the "Drug Possession Count"). *Id.* at 24. Bibbs is not charged in Count One or with participating in the Shooting.

Napier moves for relief from allegedly improper joinder of his charge with Bibbs's in the original two-count Indictment, D.E. 24 ("Indictment"), and alternatively seeks a separate trial from

Bibbs. D.E. 57-1 ("Napier Motion" or "Napier Mot.").[1] Bibbs moves under Federal Rule of Criminal Procedure 14(a) to sever his trial from his four codefendants. D.E. 162 ("Bibbs Motion" or "Bibbs Mot.") (together with the Napier Motion, the "Motions"). The Government opposes both Motions. D.E. 59 ("Napier Opp'n"); D.E. 179 ("Bibbs Opp'n"). Napier did not reply; Bibbs did, D.E. 180 ("Bibbs Reply").[2]

Bibbs's severance request turns on whether a jury could reliably decide the Drug Possession Count after sitting through the Government's case-in-chief against his four codefendants. The Court concludes that it could not. In a joint trial, the jury would hear a substantial body of highly prejudicial evidence concerning the alleged racketeering conspiracy and the Shooting that bears principally on the charges against Bibbs's codefendants. A limiting instruction would not adequately cure that prejudice. The Court will therefore **GRANT** Bibbs's Motion.

That ruling gives Napier the separate trial from Bibbs that he seeks. His severance request is therefore moot. His Rule 8(b) joinder challenge is also moot because it is directed at the original Indictment, which the Superseding Indictment replaced, and Napier has not renewed that challenge. Accordingly, those portions of Napier's Motion will be **DENIED** as **MOOT**. The only remaining request concerns the Speedy Trial Act of 1974, 18 U.S.C. §§ 3161–3174 (the "Speedy Trial Act"): Napier asks that his Speedy Trial clock "restart." Napier Mot. at 4. For the reasons explained below, Napier's request will be **DENIED** ***without prejudice***.

---

[1] Napier's Notice of Motion is at D.E. 57; Bibbs's Notice of Motion is included in D.E. 162.

[2] The Court decides the Motions without oral argument. *See* L. Crim. R. 1.1 (incorporating L. Civ. R. 78.1(b)). Unless otherwise stated, all references to a "Rule" are to the Federal Rules of Criminal Procedure.

## I. BACKGROUND[3]

### A. The Bounty Hunter Bloods and the Shooting

The Superseding Indictment alleges that all five Defendants were members and associates of the Bounty Hunter Bloods ("BHB"). SI ¶¶ 1–2, 12.

Members and associates of the BHB allegedly participate in criminal activity, "commit and agree to commit violent acts, including murder and assault with deadly weapons," and "enrich themselves through drug trafficking and firearms trafficking." *Id.* ¶ 14 (citation modified). Although only Napier and Wright are charged in Count One with racketeering conspiracy in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(d) (the "RICO Count" or "Count One"), the Superseding Indictment also alleges that, beginning at least as early as 2019, all five Defendants engaged in multiple acts of controlled-substance distribution and possession with intent to distribute, and aided and abetted acts of violence on BHB's behalf. *Id.* ¶¶ 16, 18(a)–(b).

The events critical to the Motions occurred over ten days in March 2024—*i.e.*, the Shooting. On March 12, Napier and Wright allegedly confronted members of a rival gang while Tejada, Bibbs, and Archer-Monroe were present. *Id.* ¶ 18(j). During that confrontation, Napier and Wright allegedly brandished firearms. Wright allegedly attempted to shoot a member of the rival gang, but missed, and Napier then allegedly fired a shot, killing one victim and seriously wounding another. *Id.*

[3] The facts in this Section are drawn from the Superseding Indictment, the Indictment, the parties' submissions, and the docket. *See United States v. Irizarry*, 341 F.3d 273, 287 (3d Cir. 2003) (explaining that whether offenses or defendants were properly joined "focuses upon the indictment, not upon the proof that was subsequently produced at trial").

The Superseding Indictment alleges that after the Shooting, all five Defendants fled the area and then "took steps to conceal evidence of the shooting." *Id.* According to the Complaint, surveillance footage showed Bibbs and another BHB associate travel first to Bibbs's residence and then to a hotel in Monmouth Junction. Napier and others later arrived at the same hotel and gave that associate a bag, which the associate discarded in a nearby dumpster. D.E. 1 ("Complaint") ¶ 4. Three days after the Shooting, Napier allegedly sold the .45 caliber firearm used in the Shooting and admitted during the sale that he had used it. SI ¶ 18(k).

On March 22—ten days after the Shooting—law enforcement searched a hotel room registered to Bibbs and recovered a bag of suspected cocaine. Complaint ¶ 8. Count Thirteen charges Bibbs alone with possessing cocaine base with intent to distribute on that date. SI at 24. The Government also asserts in its opposition that law enforcement found "several bullets . . . in the cupholder of a vehicle that Bibbs was observed utilizing." Bibbs Opp'n at 3. However, the Government cites no record source for that assertion, and neither the Complaint nor the Superseding Indictment alleges that the bullets were recovered. *See* Complaint ¶¶ 7–8; SI at 24, 27–28. Napier and Bibbs were arrested that day. *See* Dkt.

**B. The Charges Against Napier and Bibbs**

*Napier's Charges.* The RICO Count charges only Napier and Wright with racketeering conspiracy in violation of 18 U.S.C. § 1962(d). SI at 7. The RICO Count incorporates the Superseding Indictment's allegations about the BHB, *id.* ¶ 15, and enumerates the overt acts that Napier, Wright, and their coconspirators committed in furtherance of the conspiracy, *id.* ¶ 18. Several of those overt acts refer to all five Defendants, including allegations that they engaged in drug distribution, aided acts of violence on the BHB's behalf, and were present for the Shooting. *Id.* ¶¶ 18(a)–(c), (j). Other overt acts concern Napier's narcotics transactions and sale of the

firearm used in the Shooting, as well as Wright's firearm possession. *Id.* ¶¶ 18(e)–(k), (m). Count One also includes a Notice of Special Sentencing Factor ("Special Sentencing Factor") alleging that Napier and Wright caused the death of Victim-1 during the Shooting. *Id.* at 12. Separately, Napier is charged in ten substantive counts involving narcotics, firearms, and ammunition, including possession of the ammunition fired in the Shooting. *Id.* at 13–18, 20–23.[4]

*Bibbs's Charge.* Bibbs is charged in only one count of the Superseding Indictment. Count Thirteen charges that, around March 22, 2024, Bibbs knowingly possessed a substance containing a detectable amount of cocaine base with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). SI at 24. Unlike the RICO Count, the Drug Possession Count incorporates none of the allegations about the BHB. *Id.* Count Thirteen names no codefendant, no enterprise, and no act of violence. Nor does Count Thirteen allege that any codefendant participated in Bibbs's March 22 possession. Although Count One generally alleges that all five Defendants engaged in acts of drug distribution and possession with intent to distribute beginning in 2019, it does not identify the specific March 22 cocaine base possession charged in Count Thirteen as an overt act. Compare id. ¶ 18(a), *with id.* at 24. Thus, while the Superseding Indictment refers to Bibbs in several allegations concerning the BHB and the Shooting, the only offense it charges him with is the Drug Possession Count.

## II. LEGAL STANDARD

Rule 8(b) provides that an indictment "may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). It is a "fundamental principle that the

[4] The Superseding Indictment also charges Wright in Count Fourteen, Tejada in Count Eight, and Archer-Monroe jointly with Napier in Count Ten. SI at 19, 21, 25. Like Bibbs, Tejada and Archer-Monroe are charged in a single substantive count and are not charged in the RICO Count. *See id.* Neither Tejada nor Archer-Monroe has moved for severance.

federal system prefers 'joint trials of defendants who are indicted together' because joint trials 'promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'" *United States v. Urban*, 404 F.3d 754, 775 (3d Cir. 2005) (quoting *Zafiro v. United States*, 506 U.S. 534, 537 (1993)) (citation modified). "The preference for joint trials is particularly strong in cases involving multiple defendants charged under a single conspiracy." *United States v. Scarfo*, Crim. No. 11-740, 2012 WL 4120504, at *10 (D.N.J. Sept. 19, 2012) (citing *United States v. Voigt*, 89 F.3d 1050, 1094 (3d Cir. 1996)), *aff'd*, 41 F.4th 136 (3d Cir. 2022). "A joint trial promotes efficiency, avoids inconsistent verdicts, permits fact finders to assess the full extent of a conspiracy, and prevents the tactical disadvantage to the government from disclosure of its case." *United States v. Savage*, 85 F.4th 102, 118–19 (3d Cir. 2023) (citation modified).

Despite the strong preference for joint trials, courts can sever if either the government or a defendant appears to be prejudiced by joinder. Fed. R. Crim. P. 14(a). The burden of showing prejudice from joinder is on the party seeking severance. *United States v. Eufrasio*, 935 F.2d 553, 568 (3d Cir. 1991). This is a "heavy" burden. *Urban*, 404 F.3d at 775. A defendant is required to "pinpoint 'clear and substantial prejudice' resulting in an unfair trial." *United States v. McGlory*, 968 F.2d 309, 340 (3d Cir. 1992) (quoting *Eufrasio*, 935 F.2d at 568). "Mere allegations of prejudice are insufficient to meet this burden." *United States v. Giampa*, 904 F. Supp. 235, 265 (D.N.J. 1995). In other words, severance under Rule 14 is warranted "only if there is a *serious* risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539 (emphasis added).

The Supreme Court has noted that the risk of prejudice is "heightened" in "a complex case" where "many defendants" are tried together with "markedly different degrees of culpability." *Id.* Therefore, the Court must analyze whether a jury could reasonably "compartmentalize the allegedly prejudicial evidence in light of the quantity and limited admissibility of the evidence." *Eufrasio*, 935 F.2d at 568 (quoting *United States v. De Peri*, 778 F.2d 963, 984 (3d Cir. 1985)).

"Rule 14 leaves the determination of the risk of prejudice as well as any appropriate remedy to the sound discretion of the trial court." *Scarfo*, 2012 WL 4120504, at *12 (citing *Zafiro*, 506 U.S. at 541). Therefore, severance is not "automatic," regardless of whether "a defendant can establish some prejudice resulting from joinder." *Id.* Even when prejudice is shown, limiting instructions "often will suffice to cure" it, *Zafiro*, 506 U.S. at 539, and the Court must weigh what risk remains against the public interest in a joint trial, *De Peri*, 778 F.2d at 984.

## III. ANALYSIS

### A. A Joint Trial Would Substantially Prejudice Bibbs Under Rule 14(a)

Bibbs moves to sever under Rule 14(a) only. He argues that he is "not charged with racketeering" and that "much of the evidence to be introduced against his co-defendants at trial would not be admissible against him if he was tried by himself." Bibbs Mot. at 2, 4. The Government disagrees, responding that Defendants are joined by "a single evidentiary narrative and chain of events." Bibbs Opp'n at 2. The Government contends that Bibbs cannot show prejudice because evidence of his alleged association with the BHB and his conduct after the Shooting "would be admissible even if he were tried alone." *Id.* at 6. In his Reply, Bibbs challenges joinder for the first time and disputes the Government's account of his movements after the Shooting. Bibbs Bibbs Reply at 1–2. Because Bibbs's Motion seeks severance under Rule 14(a), the Court addresses whether a joint trial would unduly prejudice him.

The Court's Rule 14(a) analysis proceeds in two parts. *First*, the Court must determine whether a joint trial poses "a serious risk" such that the jury could not make "a reliable judgment about [Bibbs's] guilt or innocence." *Zafiro*, 506 U.S. at 539; *United States v. Walker*, 657 F.3d 160, 170 (3d Cir. 2011). That inquiry turns principally on whether the jury could compartmentalize the evidence against Bibbs and his codefendants and whether an appropriate limiting instruction could adequately cure any resulting prejudice. *See Walker*, 657 F.3d at 170–71; *Zafiro*, 506 U.S. at 539. *Second*, the Court weighs that potential prejudice against the public interest in a joint trial. *De Peri*, 778 F.2d at 984. As explained below, the limited evidentiary overlap between Bibbs's charge and the substantially broader case against his codefendants, coupled with the highly prejudicial nature of much of that evidence, creates a serious risk that a jury in a joint trial could not reliably determine Bibbs's guilt on the Drug Possession Count alone. The public interest in a joint trial does not outweigh that risk.

*1. A jury could not reliably compartmentalize the evidence against Bibbs's codefendants*

A joint trial would expose Bibbs to a substantial amount of highly prejudicial evidence bearing principally on the charges against his codefendants. The risk of prejudice comes from "evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone." *Zafiro*, 506 U.S. at 539. Such evidence is prejudicial because "evidence of a codefendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant was guilty." *Id.* The level of prejudice depends on the "volume and limited admissibility" of that evidence. *See Walker*, 657 F.3d at 170. The "risk of substantial prejudice is greater" when the evidence "reflects activities of a violent nature." *United States v. Cardascia*, 951 F.2d 474, 483 (2d Cir. 1991); *see also United States v. Gatto*, 746 F. Supp. 432, 450–51 (D.N.J. 1990) (finding that defendants not charged with violent predicate acts would be

prejudiced in a joint trial with codefendants who were), *rev'd in part on other grounds*, 924 F.2d 491 (3d Cir. 1991).

Measured under those considerations, Bibbs has carried his burden to "pinpoint 'clear and substantial prejudice' resulting in an unfair trial." *McGlory*, 968 F.2d at 340 (quoting *Eufrasio*, 935 F.2d at 568). To be sure, the evidence against Bibbs and his codefendants is not entirely separate. Although Bibbs is not charged in the RICO Count, Count One alleges as overt acts that he and the other Defendants engaged in acts of drug distribution and possession with intent to distribute beginning in 2019, aided acts of violence on BHB's behalf, and were present for the Shooting. SI ¶¶ 18(a)–(b), (j). Some evidence concerning those allegations may therefore overlap with the Government's proof of the Drug Possession Count. That overlap, however, does not eliminate the substantially broader body of evidence the jury would hear solely—or principally—to decide the charges against Bibbs's codefendants.

Bibbs is charged only in the Drug Possession Count. SI at 24. Napier and Wright, by contrast, face the RICO Count, which spans approximately six years and encompasses allegations of gang activity, drug trafficking, firearms trafficking, and violence, including the Shooting. *See id.* at 7–12. The jury would also hear evidence concerning Napier's numerous narcotics, firearm, and ammunition offenses; the firearm allegedly used in the Shooting; the alleged concealment of evidence after the Shooting; firearms trafficking; and the Special Sentencing Factor alleging that Napier and Wright caused Victim-1's death. *Id.* at 10–23. Although Bibbs is mentioned in the RICO Count's overt act allegations, he is not charged with the RICO conspiracy or with any substantive offense arising from the Shooting or its alleged concealment. His sole charge concerns cocaine base allegedly recovered from his hotel room ten days after the Shooting. *Id.* at 24; Complaint ¶ 8.

The problem, then, is not that every piece of the Government's RICO evidence would necessarily be inadmissible in a separate trial of Bibbs. It is that the jury deciding one discrete drug charge against Bibbs would first sit through a substantially larger case involving an alleged gang enterprise, a fatal shooting, firearms trafficking, other narcotics transactions, and numerous firearm offenses attributable to other defendants. The jury would then have to separate the limited evidence relevant to Count Thirteen from that much broader—and considerably more inflammatory—record when deciding Bibbs's guilt.

The concern is particularly acute because Bibbs is not charged in the RICO Count. Another district court in this Circuit confronted a similar problem in *United States v. Islam*, Crim. No. 20-45, 2021 WL 308272 (E.D. Pa. Jan. 29, 2021). There, the court severed two defendants who were not charged in the RICO conspiracy even though the substantive offenses charged against them were alleged as racketeering predicates. *Islam*, 2021 WL 308272, at *3. Bibbs's connection to the RICO Count is more attenuated: although Count One includes Bibbs in several overt-act allegations, the specific March 22 drug possession charged in Count Thirteen is not identified as a racketeering predicate or overt act. Compare SI ¶ 18(a), *with id.* at 24.

The Government responds principally by emphasizing the evidentiary overlap. According to the Government, evidence of Bibbs's "association with and participation in the [BHB] enterprise as well as his presence at the Shooting and actions taken after the Shooting would be admissible even if he were tried alone." Bibbs Opp'n at 6. The Court agrees that *some* evidence in the joint trial may also be admissible in a separate trial of Bibbs. The Government, however, overstates the extent of that overlap. The Court need not decide the admissibility of every anticipated exhibit before trial. For present purposes, it is enough that substantial portions of the evidence necessary to prove the charges against Bibbs's codefendants—particularly the details of the fatal Shooting

and their unrelated firearm and narcotics conduct—have little or no apparent bearing on whether Bibbs knowingly possessed cocaine base with intent to distribute it.

Three categories of evidence likely to be introduced against Bibbs's codefendants illustrate the problem with trying Bibbs along with his codefendants. *First*, to convict Napier and Wright on the RICO Count and to establish the Special Sentencing Factor, the Government will likely offer evidence of who carried out the Shooting, that one victim died and another was seriously wounded, and that a ballistics analysis matched Napier's gun to the ammunition found at the scene. SI ¶ 18(j); *id.* at 12; Bibbs Opp'n at 3. Those details may be central to the charges against Napier and Wright, but they do not tend to establish Bibbs's knowing possession of cocaine base or his intent to distribute it.

*Second*, Napier's self-incriminating statement when he sold the gun from the Shooting is admissible against Napier as a statement of an opposing party under Federal Rule of Evidence 801(d)(2)(A). However, that rule does not make Napier's statement admissible against Bibbs, and the statement has no apparent bearing on the Drug Possession Count. *See* SI ¶ 18(k); Fed. R. Evid. 801(d)(2)(A).

*Third*, although some evidence concerning Bibbs's own association with BHB drug trafficking may bear on his intent, that does not make the broader enterprise case relevant to the Drug Possession Count. For instance, evidence concerning the BHB's history and structure, acts of violence and firearms trafficking, and Napier's separate narcotics and firearm conduct would principally prove the RICO Count and the substantive charges against other Defendants. *See* SI ¶¶ 1–14, 16, 18; *United States v. Thomas*, Crim. No. 17-296, 2019 WL 3285801, at *2 (E.D. Cal. July 22, 2019) (denying the government's motion to admit evidence of a gang's history, structure, and rules in a narcotics prosecution, where the defendant was "not charged . . . with either a RICO

violation or engaging in a continuing criminal enterprise," and his membership therefore did not tend to prove an element of the charged offense).

The marked disparity between Bibbs's charge and the charges against Napier and Wright reinforces that prejudice. Some courts confronting a similar division between defendants charged with violent conduct and those charged only with nonviolent offenses have severed the latter. *See Gatto*, 746 F. Supp. at 446–51 (separating defendants charged with violent predicate acts from those who were not to reduce prejudicial spillover); *United States v. Montgomery*, Crim. No. 14-205, 2018 WL 3640299, at *2–3 (W.D. Pa. July 31, 2018) (severing a defendant charged only with money laundering from codefendants charged with narcotics trafficking, firearms offenses, murder, and attempted murder).

Those cases illustrate the problem here. Bibbs is charged only in the Drug Possession Count, while Napier and Wright are charged in the RICO Count, whose alleged overt acts include the Shooting. A jury trying all five Defendants would therefore hear substantial evidence of a fatal shooting, an attempted shooting, firearms trafficking, and other criminal conduct before deciding the single narcotics charge against Bibbs. The disparity is both quantitative and qualitative. The most inflammatory evidence in the case concerns violent conduct for which Bibbs is not charged.

The scope of the joint trial compounds that risk. In assessing prejudice, courts consider the "volume" of the evidence as well as its limited admissibility. *Walker*, 657 F.3d at 170. The record contains no estimate of the length of a joint trial, but the Superseding Indictment gives a sense of its likely scope. It charges five defendants in fourteen counts, including a racketeering conspiracy alleged to have run from 2019 through June 2025 and numerous narcotics and firearms offenses arising from separate conduct. SI at 1–25. Bibbs describes the discovery as "voluminous." Bibbs Mot. at 4. The Drug Possession Count, by contrast, charges Bibbs alone

with possessing cocaine base with intent to distribute on a single date. SI at 24. A jury deciding that charge would thus have to distinguish the evidence relevant to Bibbs from a substantially larger body of proof concerning his codefendants. Given both the volume and inflammatory nature of that evidence, this is the type of compartmentalization that *Islam* found "untenable" where jurors would have been required "to ignore vast amounts of evidence and potentially weeks' worth of testimony" when considering the severed defendants' charges. *See Islam*, 2021 WL 308272, at *4.

Taken together, the limited evidentiary overlap, the marked disparity among the charges, and the volume and inflammatory nature of the evidence against Bibbs's codefendants create a serious risk that a jury could not reliably compartmentalize the evidence when deciding the Drug Possession Count.

*2. A limiting instruction could not cure prejudice*

Before ordering severance, the Court must consider "less drastic measures, such as limiting instructions." *Zafiro*, 506 U.S. at 539. Juries are presumed to follow their instructions. *Richardson v. Marsh*, 481 U.S. 200, 211 (1987). That presumption, however, "is a pragmatic one." *Id.* The Supreme Court has recognized, particularly in complex trials, that "limiting instructions on evidence admissible only as to one defendant might in some circumstances be inadequate to prevent prejudice." *United States v. Lane*, 474 U.S. 438, 450 n.13 (1986). Likewise, the Third Circuit has cautioned that standard instructions directing jurors to consider the evidence separately "are not a panacea"; "[i]n some cases, the risk of prejudice will be so high that severance is required." *Green*, 114 F.4th at 180 (reversing the denial of severance in a case of mutually antagonistic defenses).

The Government argues that the "mere possibility" that some evidence will be admissible against one defendant and not another "does not overcome the considerations of judicial economy," and that a jury may be trusted to compartmentalize the evidence presented. Bibbs Opp'n at 5 (quoting *United States v. Acavino*, 467 F. Supp. 284, 289 (E.D. Pa. 1979)).

The Court disagrees given the size and scope of the evidence needing to be compartmentalized. Indeed, courts have declined to rely on instructions where the evidence to be compartmentalized is at the core of the trial. For instance, in *United States v. Blunt*, 930 F.3d 119 (3d Cir. 2019), the Third Circuit vacated both defendants' convictions and ordered separate trials despite the jury's receipt of standard limiting instructions. The trial record was "rife with" evidence that would not have been admitted against one defendant in a separate trial, and descriptions of "threatened and actual violence" risked eliciting "an inappropriate emotional response from the jurors, resulting in unfair prejudice." *Id.* at 126–27; *see also Green*, 114 F.4th at 180 (discussing *Blunt*). Similarly, in *United States v. Dentico*, a court in this District severed two defendants charged with only one count of a nineteen-count racketeering indictment because, given their "minor role" in the indictment, "a substantial danger exist[ed] that a jury will not be able to compartmentalize the evidence against these two defendants." Crim. No. 05-607, 2006 WL 757217, at *2 (D.N.J. Mar. 20, 2006).

The same concern exists here. Evidence regarding the Shooting will occupy a significant place in the Government's proof of the RICO Count and the Special Sentencing Factor, and the jury will be required to consider that evidence fully against Napier and Wright. At the same time, the jury would have to avoid allowing the details of that violence—who fired, who was killed, who was seriously wounded, and Napier's alleged admission that he used the firearm during the Shooting—to influence its determination whether Bibbs knowingly possessed cocaine base with

intent to distribute. That is an especially difficult line to maintain given the volume and inflammatory nature of the evidence identified above. A limiting instruction therefore would not sufficiently reduce the serious risk that evidence admitted against Bibbs's codefendants would spill over into the jury's consideration of the Drug Possession Count. The Court concludes that severance is necessary notwithstanding the availability of limiting instructions.

*3. The public interest in a joint trial does not outweigh the risk of prejudice*

A finding of prejudice does not end the Court's inquiry. Rule 14 requires the Court "to balance the public interest considerations in a joint trial against the possibility of prejudice inherent in the joinder of defendants." *De Peri*, 778 F.2d at 984. Two interests are particularly relevant here: joint trials reduce the risk of inconsistent verdicts and promote judicial economy. *See Urban*, 404 F.3d at 775.

As to the first, the interest in avoiding inconsistent verdicts carries less weight here because Bibbs shares no count with any codefendant. Separate juries therefore would not be deciding the same offense against multiple defendants, although some factual overlap between the trials would remain.

As to the second, the judicial economy interest here is weaker than in an ordinary racketeering case. When several defendants are charged in the same conspiracy, separate trials may require the Government to prove the same conspiracy repeatedly. *See Eufrasio*, 935 F.2d at 568 ("The public interest in judicial economy favors joint trials where the same evidence would be presented at separate trials of defendants charged with a single conspiracy.").

Where a defendant is not charged in the conspiracy, however, that duplication may be substantially reduced. *See Islam*, 2021 WL 308272, at *3 ("[B]ecause they are not charged as members of the underlying conspiracy, considerations of judicial economy do not factor here as

they do in many other RICO cases."); *Montgomery*, 2018 WL 3640299, at *2 ("[A] separate trial for Defendant Cook would not unduly burden judicial resources, since the overwhelming majority of the evidence produced in a joint trial would not relate to Defendant Cook's case."). That is true here. The Drug Possession Count presents a comparatively narrow case involving Bibbs's alleged possession of cocaine base with intent to distribute on a single date. *See United States v. DiNome*, 954 F.2d 839, 845 (2d Cir. 1992) (observing that a separate trial of the defendants against whom the racketeering counts had been dismissed "could have been completed in a very short period of time, with the risk of spillover prejudice entirely eliminated").

The Government warns that severed trials "would likely involve substantially similar witnesses and other evidence." Bibbs Opp'n at 4. The Court agrees there will be some duplication. As explained above, some evidence concerning Bibbs's alleged association with BHB, his presence at the Shooting, and the events leading law enforcement to the hotel may overlap. Yet the evidence necessary to prove the Drug Possession Count remains substantially narrower than the proof required to try the RICO Count and the numerous substantive offenses charged against Bibbs's codefendants. *See United States v. Burke*, 789 F. Supp. 2d 395, 400 (E.D.N.Y. 2011) (declining to find that "five limited overlapping witnesses are substantial enough to necessitate a joint trial" of a defendant not charged in a thirty-year racketeering conspiracy).

A joint trial would also require the Court repeatedly to distinguish for the jury which portions of the enterprise evidence it may consider against Bibbs and for what purpose. Severance would not eliminate all evidentiary disputes concerning that evidence, but it would eliminate the need to make those distinctions in the course of a five-defendant trial. *See United States v. Teague*, Crim. No. 25-40, 2026 WL 1998633, at *6 (S.D.N.Y. July 10, 2026) (severing a defendant not charged in the racketeering conspiracy in part because severance "obviates the need for [the court]

to make numerous rulings throughout trial regarding the admissibility of certain evidence of limited relevance").

The Court also takes into account the posture of the case in exercising its discretion. Bibbs faces only one substantive count and has been detained since January 29, 2025. D.Es. 43 & 44. His subsequent request for release was denied on March 9, 2026, and he remains detained. D.Es. 151 & 152. He has asked the Court for a trial schedule. D.E. 189 ("Bibbs Letter") at 1–2. This District has recognized prolonged pretrial detention as a consideration favoring severance where a peripheral defendant otherwise would face a substantially longer trial. *See Gatto*, 746 F. Supp. at 450 (explaining that the prospect that detention "may be further extended by a prolonged trial" weighed "heavily in favor of expediting their trial by severing the trials of peripheral defendants"). Given the comparatively limited proof necessary to try the Drug Possession Count, Bibbs's continued detention further favors a separate trial.

* * *

In sum, Bibbs is not charged in the RICO Count and does not share the Drug Possession Count with any codefendant. Although some evidence would overlap between separate trials, a substantial body of evidence concerning the RICO conspiracy, the Shooting, and the substantive offenses of Bibbs's codefendants has little or no apparent bearing on the Drug Possession Count. Presenting that evidence to the same jury that must determine Bibbs's guilt creates a serious risk of prejudicial spillover that, for the reasons explained above, a limiting instruction would not adequately cure. The comparatively modest efficiencies of a joint trial do not outweigh that risk. Bibbs has shown clear and substantial prejudice, and the Court therefore will **GRANT** Bibbs's Motion.

Severance also has a prospective consequence under the Speedy Trial Act. Severance does not restart Bibbs's clock or disturb time previously excluded. Once Bibbs's trial is severed, however, § 3161(h)(6)'s codefendant exclusion no longer supplies a basis to exclude future delay attributable solely to his former codefendants; any further exclusion as to Bibbs must rest on another provision of § 3161(h). *See United States v. Novak*, 715 F.2d 810, 814 (3d Cir. 1983), *abrogated on other grounds by United States v. Felton*, 811 F.2d 190, 200 (3d Cir. 1987) (en banc). Bibbs has also requested a trial schedule following resolution of his Motion. Bibbs Letter at 2. The Court will therefore direct the Government and Bibbs to confer and report as set out in the Order below.

**B. Napier's Motion Is Moot in Part and Otherwise Denied**

Napier's Motion predates the Superseding Indictment. When Napier filed his Motion in March 2025, the operative pleading was a two-count Indictment charging Napier with possessing ammunition on March 12, 2024, and Bibbs with possession with intent to distribute cocaine on March 22, 2024. *See* Indictment. As to the Indictment, Napier argued that the two counts describe "two possessory offenses that occurred on separate dates, at separate locations, by separate individuals," and therefore lacked the transactional nexus Rule 8(b) requires. Napier Mot. at 3.

In the alternative, Napier sought severance under Rule 14(a) based on the Speedy Trial Act. Bibbs had consented to a continuance that Napier did not join, and Napier contended that the resulting exclusion of time prejudiced his own "Speedy Trial rights." *Id.* He therefore asked the Court to sever his trial from Bibbs's and to declare that his Speedy Trial clock "must restart." *Id.* at 4; *see* D.E. 57-2. The Government opposed on both grounds. Napier Opp'n at 2–6.

Two intervening developments narrow Napier's Motion: the Superseding Indictment moots his Rule 8(b) challenge to the original Indictment, and the Court's severance of Bibbs moots

his request for a separate trial. Napier's remaining request—to "restart" his Speedy Trial clock—is **DENIED *without prejudice***.

*1. The Court need not resolve the Rule 8(b) arguments*

Rule 8(b) permits defendants to be charged together "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions." Fed. R. Crim. P. 8(b). Rule 8(b) therefore requires "a transactional nexus" linking the defendants' charged conduct. *United States v. Jimenez*, 513 F.3d 62, 83 (3d Cir. 2008). The Court's inquiry into whether the required nexus exists "focuses upon the indictment, not upon the proof that was subsequently produced at trial." *Irizarry*, 341 F.3d at 287. Napier's and Bibbs's Rule 8(b) arguments arise in different procedural postures.

Napier's Motion is directed at the original two-count Indictment, which the Superseding Indictment replaced. The Superseding Indictment materially changed the allegations relevant to joinder: it charges Napier and Wright with RICO conspiracy and alleges, as overt acts in furtherance of that conspiracy, conduct involving Bibbs and the other codefendants. *See* SI ¶¶ 15–18. Napier has not challenged joinder under the Superseding Indictment. His Rule 8(b) challenge to joinder under the original Indictment is therefore moot.

Bibbs challenges joinder for the first time in Reply. He argues that he is not charged in the RICO Count and that the Drug Possession Count is not specifically identified as an overt act. Bibbs Reply at 1–2. In his view, any transactional nexus must instead rest on the Superseding Indictment's broader allegations that he associated with BHB, distributed narcotics in its territory, and helped conceal evidence of the Shooting. *Id.*; *see* SI ¶¶ 12, 18(a), 18(j).

The Court, however, need not decide whether those allegations satisfy Rule 8(b). Bibbs seeks a separate trial for the alleged misjoinder, and the Court grants him a separate trial above under Rule 14(a). Whether Rule 8(b) independently requires the same relief therefore makes no

difference to the disposition. *See United States v. Bellomo*, 954 F. Supp. 630, 651 n.14 (S.D.N.Y. 1997) (declining to reach a Rule 8(b) misjoinder argument because the court granted severance under Rule 14); *United States v. Lawson*, Crim. No. 08-21, 2009 WL 1158666, at *3 (E.D. Ky. Apr. 27, 2009) (same).

*2. Napier's request for a separate trial is moot*

Napier also asks the Court to sever his trial from Bibbs's. Napier Mot. at 1. Because the Court will grant Bibbs a separate trial as explained above, Napier's request for the same relief is moot.

*3. Napier's Speedy Trial Act request is denied without prejudice*

What remains is Napier's request that the Court declare that "the Speedy Trial Clock must restart" as to him. Napier Mot. at 4. The Speedy Trial Act excludes from a defendant's clock "[a] reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted." 18 U.S.C. § 3161(h)(6). Thus, "until severance is granted, 'an exclusion applicable to one defendant applies to all codefendants.'" *United States v. Claxton*, 766 F.3d 280, 292 (3d Cir. 2014) (quoting *Novak*, 715 F.2d at 814).

Napier identifies only one prejudice from joinder: Bibbs's continuance excluded time from Napier's Speedy Trial clock even though Napier did not join the continuance. Napier Mot. at 3. The Government responds that this shared exclusion does not establish prejudice warranting severance under Rule 14(a). Napier Opp'n at 5.

The Court agrees with the Government. Under *Zafiro*, severance is warranted only if a joint trial creates a serious risk of compromising a specific trial right or preventing the jury from making a reliable judgment about guilt or innocence. *See Zafiro, 506 U.S. at 539. Napier* identifies neither risk. His asserted prejudice is the exclusion of time while he remained joined with Bibbs.

Section 3161(h)(6), however, expressly contemplates that consequence, subject to its requirement that the resulting delay be reasonable. Napier does not argue that the delay attributable to Bibbs was unreasonable. See 18 U.S.C. § 3161(h)(6). Indeed, as *Novak* explains, § 3161(h)(6) was designed to prevent the Speedy Trial Act from forcing the Government to try one codefendant separately merely because another codefendant's proceedings generate excludable delay. *Novak*, 715 F.2d at 814 (citation modified).

Nor does severance "restart" Napier's Speedy Trial clock. Section 3161(h)(6) applies only while defendants remain joined. *See Claxton*, 766 F.3d at 292. Severance therefore does not erase previously excluded time or begin a new seventy-day period; it simply removes § 3161(h)(6) as a basis for excluding future delay attributable solely to Bibbs. Whether Napier's clock has expired still depends on every other exclusion applicable to him, including delay attributable to codefendants with whom he remains joined, such as Wright, and delay arising from Napier's own motions or continuances. *See* 18 U.S.C. § 3161(h)(1)(D), (h)(6), (h)(7). Napier neither provides that calculation nor seeks dismissal under § 3162(a)(2). The Court will therefore **DENY** Napier's request for a determination that his Speedy Trial Act clock must restart, without prejudice to a properly supported motion under the Speedy Trial Act.[5]

---

[5] Napier's argument that evidence of his prior felony conviction would prejudice Bibbs, Napier Mot. at 3 n.1, is moot because Bibbs will be tried separately. Nothing in this Order forecloses a properly supported Rule 14 motion by Napier or Wright on grounds not raised here. The Court has "a continuing duty at all stages of the trial to grant a severance if prejudice does appear." Schaffer *v. United States*, 362 U.S. 511, 516 (1960).

## IV. CONCLUSION AND ORDER

For the reasons set forth above,

**IT IS**, on this **25th** day of September, 2026,

**ORDERED** that Defendant Jihad Bibbs, Sr.'s Motion to Sever, D.E. 162, is **GRANTED**, and Count Thirteen of the Superseding Indictment, D.E. 71, shall be tried separately from the remaining counts; and it is further

**ORDERED** that Defendant Carl Napier's Motion for Relief from Improper Joinder, D.E. 57, is **DENIED** as **MOOT** insofar as it challenges joinder under the superseded Indictment, D.E. 24, and insofar as it seeks a trial separate from Bibbs; Napier's request for a determination that his Speedy Trial clock must restart is DENIED without prejudice; and it is further

**ORDERED** that, within **seven days** of this Order, the Government and counsel for Bibbs shall meet and confer and file a joint letter setting out their respective Speedy Trial Act calculations as to Bibbs, the orders and statutory grounds supporting each claimed exclusion, a proposed trial date for Count Thirteen, the anticipated length of that trial, and any remaining pretrial deadlines. This Order does not itself exclude time under the Speedy Trial Act; and it is finally

**ORDERED** that the Clerk of Court shall terminate the motions pending at D.E. 57 and D.E. 162.

Evelyn Padin, U.S.D.J.